UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LUCILLE CLUTE *ex rel.*
SHEILA MARIE McGUIRE,

                                        Plaintiff,                Case # 18-CV-30-FPG

v.                                                            DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

## INTRODUCTION

Plaintiff Lucille Clute brings this action on behalf of her deceased mother, Sheila Marie McGuire, pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied McGuire's application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 8, 11. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On August 15, 2012, McGuire protectively applied for DIB and Supplemental Security Income ("SSI") with the Social Security Administration ("the SSA"). Tr.[1] 264-72. She alleged disability since June 12, 2012 due to migraines, high blood pressure, anxiety, panic attacks, and a fear of being with people and going outside. Tr. 295. On April 24, 2014, McGuire appeared and

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 5.

1

testified at a hearing before Administrative Law Judge Timothy J. Trost. Tr. 34-54. On August 11, 2014, ALJ Trost issued a decision finding that McGuire was not disabled within the meaning of the Act. Tr. 98-112. On October 14, 2014, McGuire filed a request for review with the Appeals Council. Tr. 175-79. On January 7, 2015, while her request for review was pending, McGuire died. Tr. 288.

On March 11, 2015, Clute filed a substitution of party and was substituted as a party for McGuire's DIB application.[2] Tr. 58, 190. On April 30, 2015, the Appeals Council remanded McGuire's case for further administrative proceedings. Tr. 116-20. On August 19, 2016, Clute and a vocational expert ("VE") appeared and testified at a hearing before ALJ Timothy M. McGuan ("the ALJ"). Tr. 13-33. On October 20, 2016, the ALJ issued a decision finding that McGuire was not disabled within the meaning of the Act. Tr. 58-69. On November 8, 2017, the Appeals Council denied Clute's request for review. Tr. 1-7, 77-80. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[2] There was no appropriate party to substitute for McGuire's SSI application. Tr. 58, 79-80.

2

(quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*Id.* § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

3

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.  The ALJ's Decision

The ALJ analyzed McGuire's claim for benefits under the process described above. At step one, the ALJ found that McGuire had not engaged in substantial gainful activity since the alleged onset date. Tr. 60. At step two, the ALJ found that from the alleged onset date of June 12, 2012 to September 30, 2013, McGuire was obese, which constituted a severe impairment; as of September 30, 2013, McGuire also had the severe impairments of heart disease status post myocardial infarction[3] and stenting; and from February of 2014 through her death on January 7, 2015, McGuire also had the severe impairment of L5 radiculopathy.[4] Tr. 61-63. At step three, the

---

[3] Myocardial infarction is more commonly known as a heart attack. *See* Johns Hopkins Medicine, Heart & Vascular Institute, *available at* https://www.hopkinsmedicine.org/heart_vascular_institute/conditions_treatments/conditions/myocardial_infarction.html (last visited Dec. 20, 2018).

[4] Lumbar radiculopathy is a disease of the lumbar spinal nerve root that manifests as pain, numbness, or weakness of the buttock and leg. *See* Emory Healthcare, Orthopedics: Conditions & Treatments, *available at* https://www.emoryhealthcare.org/orthopedics/lumbar-radiculopathy.html (last visited Dec. 20, 2018). It typically occurs when the spinal nerve roots are irritated or compressed. *Id.*

ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 63.

Next, the ALJ determined that from June 12, 2012 through September 30, 2013, McGuire retained the RFC to perform light work,[5] but that from October 1, 2013 through her death on January 7, 2015, she retained the RFC to perform only sedentary work.[6] Tr. 64-67.

At step four, the ALJ found that from June 12, 2012 through September 30, 2013, McGuire could perform her past relevant work as a pool cover seamstress, but that she could not perform any of her past relevant work as of October 1, 2013. Tr. 67. At step five, the ALJ relied on the VE's testimony and found that from October 1, 2013 through her death on January 7, 2015, McGuire could have adjusted to other work that existed in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 68. Specifically, the VE found that McGuire could have worked as a ticket seller and telephone survey worker. *Id.* Accordingly, the ALJ concluded that McGuire was not disabled under the Act. Tr. 69.

## II. Analysis

Clute argues that remand is required because the ALJ failed to comply with the Appeals Council's remand order. ECF No. 8-1 at 8-12; ECF No 12. Specifically, Clute asserts that the

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

ALJ should have obtained a medical opinion addressing McGuire's functional limitations due to her heart attack and low back pain. *Id.*

### 1. Appeals Council Remand Order

When the Appeals Council remands a case, the ALJ "shall take any action" that the Appeals Council orders and "may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b). If the ALJ does not abide by the directives in an Appeals Council's order, remand is warranted. *Savino v. Astrue*, No. 07-CV-4233 (DLI), 2009 WL 2045397, at *9 (E.D.N.Y. July 8, 2009) (citing 20 C.F.R. § 404.977(b)) (other citations omitted).

Here, the Appeals Council determined that the ALJ's 2014 decision finding that McGuire had no severe impairments lacked a sufficient rationale. Tr. 118. In its remand order, the Appeals Council ordered that, in light of McGuire's death due to cardiovascular issues approximately five months after the ALJ rendered his decision,[7] "further development and analysis, including medical expert input, is necessary for this case." *Id.* The remand order also directed the ALJ to, among other things, "obtain evidence from a medical expert . . . to clarify the nature and severity of [McGuire]'s impairments." Tr. 119. It also instructed that, if the ALJ found a severe impairment, he must "give consideration to [McGuire]'s maximum [RFC] and provide [a] rationale with specific references to the evidence of record in support of all assessed limitations." *Id.* (citations omitted).

For the reasons that follow, the Court finds that the ALJ's RFC determination for June 12, 2012 through September 30, 2013 is supported by substantial evidence; however, it concludes that

---

[7] McGuire's death certificate indicates that she died from cardiopulmonary arrest due to acute myocardial infarction, coronary artery disease, chronic obstructive pulmonary disease, hypertension, and high cholesterol. Tr. 288.

6

the RFC finding for October 1, 2013 through January 7, 2015 lacks substantial evidence and that the ALJ violated the Appeals Council's remand order in making that determination.

### 2. RFC from June 12, 2012 through September 30, 2013

From the alleged disability onset date of June 12, 2012 through September 30, 2013, the ALJ found that McGuire was obese, which constituted a severe impairment, and that she retained the capacity to perform light work. Tr. 61, 64-65. For the reasons that follow, the Court finds this determination supported by substantial evidence.

In support of the physical RFC assessment, the ALJ specifically discussed McGuire's obesity and noted that it "may have an adverse impact on co-existing impairments." Tr. 64-65. The ALJ cited Social Security Ruling 02-1p[8] and, after considering McGuire's obesity in combination with her nonsevere impairments, concluded that McGuire retained the RFC to perform light work. *Id.*

The ALJ also cited McGuire's 2012 Function Report wherein she indicated that her impairments do not affect her ability to lift, stand, walk (except that she needs 20 minutes to rest after doing so), sit, climb stairs, kneel, squat, reach, or use her hands. Tr. 65, 307, 309-10. McGuire also reported that her activities include reading, sewing, cooking, watching television, and using the computer and that she can vacuum, do laundry, clean, and perform her own personal care. Tr. 65, 304-05, 308 390, 395.

As for the opinion evidence relevant to McGuire's physical capacity, consultative examiner Donna Miller, D.O., examined McGuire on October 4, 2012. Tr. 389-92. She opined that McGuire had no significant limitations. Tr. 391. The ALJ afforded "some weight" to this opinion because he found it consistent with Dr. Miller's examination findings, the other record evidence, and

---

[8] This Ruling guides the ALJ's evaluation of obesity in disability claims. *See* S.S.R. 02-1p, 2002 WL 34686281 (S.S.A. Sept. 12, 2002).

7

McGuire's daily activities, but declined to give the opinion great weight because it did not consider the effects of McGuire's obesity. Tr. 65.

With respect to McGuire's mental functioning, the ALJ pointed out that McGuire had a high school equivalency diploma and did not receive special education services in school. Tr. 65 (citing Tr. 296). Although McGuire alleged that she could not go out alone due to fear, she later indicated that she could sometimes travel alone. Tr. 65 (citing Tr. 306, 311). McGuire also indicated that she has no difficulty paying attention, can finish what she starts, can follow oral and written instructions, and gets along with authority figures. Tr. 310.

As for the opinion evidence relevant to McGuire's mental capacity, on October 4, 2012, consultative examiner Susan Santarpia, Ph.D., performed a psychiatric evaluation of McGuire and opined only that she had a mild impairment in her ability to perform complex tasks independently. Tr. 393-96. On December 5, 2012, state review psychologist Martha J. Totin opined that McGuire's mental impairments were not severe. Tr. 86. The ALJ afforded "significant weight" to both of these opinions. Tr. 65.

Based on the above evidence and medical opinions, the Court finds that the ALJ properly considered McGuire's obesity and its impact on her RFC from June 12, 2012 through September 30, 2013, and that his finding for this time period is supported by substantial evidence.

### 3. RFC from October 1, 2013 through January 7, 2015

From October 1, 2013 through her death on January 7, 2015, the ALJ found McGuire to have the additional severe impairments of heart disease status post myocardial infarction and stenting and L5 radiculopathy, but he determined that she could still perform sedentary work. Tr. 61, 66-67. For the reasons that follow, the Court finds that this determination is not supported by substantial evidence.

8

In its remand order, the Appeals Council specifically noted that, in light of McGuire's death due to cardiovascular issues shortly after the ALJ rendered his 2014 decision, "further development and analysis, *including medical expert input*, is necessary for this case." Tr. 118 (emphasis added). The remand order also directed the ALJ to "obtain evidence from a medical expert . . . to clarify the nature and severity of [McGuire]'s impairments." Tr. 119.

Despite these directions, the ALJ did not obtain any additional medical opinions even though he found McGuire to have severe cardiac and back impairments. In fact, the ALJ explicitly recognized in his decision that the record contained "no medical source statements since October 1, 2013." Tr. 67. Thus, the only opinions as to McGuire's functioning were those of consultative examiners Drs. Miller and Santarpia and review psychologist Dr. Totin, all of which were rendered in 2012. Tr. 89-93, 389-96. McGuire argues that her heart attack on October 19, 2013 and back pain beginning in February of 2014 rendered these opinions stale. ECF No. 8-1 at 10-11. The Court agrees.

A stale medical opinion does not constitute substantial evidence to support an ALJ's findings. *See Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015) (quotation marks and citation omitted), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (summary order). An opinion may be stale if the claimant's condition deteriorates after the opinion is rendered and before the ALJ issues his decision. *See, e.g.*, *Welsh v. Colvin*, No. 14-CV-6715P, 2016 WL 836081, at *12 (W.D.N.Y. Mar. 4, 2016) (finding that an opinion rendered before the "significant deterioration" of the claimant's mental status could not "constitute substantial evidence supporting the ALJ's determination"). The Court finds that McGuire's condition deteriorated after the SSA's doctors evaluated her. Even though the ALJ did not rely on these opinions in support of his decision for

9

October 1, 2013 through January 7, 2015, the Court nonetheless finds that these opinions cannot constitute substantial evidence in support of his RFC finding for that time period.

The Court recognizes that an RFC assessment does not have to "perfectly correspond" with any medical source opinion; rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order). But an ALJ cannot "assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted); *see also Jermyn v. Colvin*, No. 13-CV-5093 (MKB), 2015 WL 1298997, at *19 (E.D.N.Y. Mar. 23, 2015) ("[N]one of these medical sources assessed Plaintiff's functional capacity or limitations, and therefore provide no support for the ALJ's RFC determination.").

When an ALJ does not rely on a medical opinion to formulate the RFC, he must "provide a function-by-function analysis of [the claimant]'s work-related capacity." *Ford v. Colvin*, No. 12-CV-301A, 2013 WL 4718615, at *8 (W.D.N.Y. Sept. 3, 2013). If the ALJ merely summarizes the evidence but does not explain how it supports his RFC determination, remand is required. *See Cole v. Colvin*, No. 6:14-cv-6677(MAT), 2015 WL 9463200, at *5 (W.D.N.Y. Dec. 28, 2015) ("[A]fter setting forth Plaintiff's RFC, the ALJ merely summarized some of the medical evidence in the record but did not discuss how the evidence to which she referred supported her conclusion that Plaintiff can perform a range of medium exertional work. Remand accordingly is required.")

Similarly, the Appeals Council's remand order instructed that, if the ALJ found a severe impairment, he must "give consideration to [McGuire]'s maximum [RFC] and provide [a] rationale with *specific references to the evidence of record in support of all assessed limitations*."

Tr. 119 (citations omitted and emphasis added). Despite the relevant case law and the directions from the Appeals Council, the ALJ did not provide a specific rationale in support of the RFC determination.

Instead, the ALJ summarized notes from McGuire's hospital stay due to her heart attack. Tr. 66 (citing Tr. 414-20, 443-60). The ALJ did not tie any of this evidence to the physical demands of sedentary work and the complex findings did not permit him to render a common-sense judgment about McGuire's functional capacity. *See, e.g.*, *Ludwig v. Berryhill*, No. 16-CV-256-FPG, 2017 WL 2531715, at *4 (W.D.N.Y. June 12, 2017) (finding error where the ALJ did not connect the medical evidence to the physical demands of light work and noting that the "evidence, which contains complex medical findings like MRI and x-ray results, does not permit the ALJ to render a common sense judgment about [the claimant]'s functional capacity").

The ALJ also noted that McGuire "denied any further cardiac symptoms" after her heart attack and only once complained of "constant dizziness." Tr. 66 (citing Tr. 422-24, 465-68, 471-81). Additionally, the ALJ pointed out that an exercise stress test, echocardiography, and arterial ultrasound were "unremarkable" or "within normal limits." *Id.* (citing Tr. 422-24, 465-68, 471-81, 500). But the ALJ again failed to explain how any of this evidence demonstrated that McGuire could perform sedentary work.

As to McGuire's back pain beginning in February of 2014, the ALJ summarized some relevant examination findings but did not connect that evidence to the physical demands of sedentary work. In fact, some of the treatment notes that the ALJ cites contradict his determination that McGuire can perform sedentary work. Specifically, records reveal that McGuire complained of shooting pain with prolonged sitting, increased low back pain with prolonged standing and walking, intermittent numbness in her feet and numbness and tingling in her toes, occasional loss

of balance, the need to sit down frequently, and increased pain throughout the day. Tr. 491, 495. These symptoms, especially difficulty with prolonged sitting, standing, or walking, would all affect McGuire's ability to perform sedentary work. *See* 20 C.F.R. § 404.1567(a); S.S.R. 96-9P, 1996 WL 374185, at *3 (S.S.A. July 2, 1996) ("Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.").

The Court is troubled that the Appeals Council failed to ensure that the ALJ followed its directives on remand. Instead of carefully reviewing the ALJ's decision, the Appeals Council simply sent Clute a standard letter indicating that it "considered" the reasons she disagreed with the ALJ's decision and found no basis to change that decision. Tr. 2-4. "A more thorough follow-up may well have precluded the need for the instant action." *Ellis v. Colvin*, 29 F. Supp. 3d 288, 300 (W.D.N.Y. 2014) (citation omitted).

Accordingly, for all the reasons stated, the Court remands this matter for further administrative proceedings regarding McGuire's RFC from October 1, 2013 through January 7, 2015 and directs the ALJ to obtain a medical opinion for this time period.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is GRANTED and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is DENIED.

This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). Specifically, the Court finds that the ALJ's RFC assessment from June 12, 2012 through September 30, 2013 is supported by substantial evidence, but it remands this matter for further administrative proceedings regarding McGuire's RFC from

October 1, 2013 through January 7, 2015 and it directs the ALJ to obtain a medical opinion for this time period.

The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: December 21, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court